IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

BRANDON ZITTERKOPF,                )
individually and on behalf of )
his minor son, IZIAH          )
ZITTERKOPF, HENRY ZITTERKOPF, )
individually and as Personal  )
Representative of the Estate  )
of LISA ZITTERKOPF,           )
                              )
            Plaintiff,        )        7:08CV3190
                              )
        v.                    )
                              )
LANNY HANKS, in his official  )        MEMORANDUM AND ORDER
and individual capacities,    )
BRYAN MOREHOUSE, in his       )
official and individual       )
capacities, JAY WOODARD, in   )
his official and individual   )
capacities, ALEX IRONS, in    )
his official and individual   )
capacities, MARK BLISS, in    )
his official and individual   )
capacities, and JUSTIN        )
VICKERS, in his official and  )
individual capacities,        )
                              )
            Defendants.       )
_____)


        This matter is before the Court on defendants Lanny

Hanks ("Hanks") and Mark Bliss' ("Bliss," collectively, "Nebraska

Defendants") motion for summary judgment based on qualified

immunity (Filing No. 48) and defendants Alex Irons ("Irons"),

Bryan Morehouse ("Morehouse"), Justin Vickers ("Vickers"), and

Jay Woodard's ("Woodard," collectively, "Wyoming Defendants")

motion for summary judgment based on qualified immunity (Filing

No. 52).  Upon review of the motions, the parties' briefs and

evidentiary submissions, and the applicable law, the Court finds the motions should be granted in part and denied in part.

BACKGROUND[1]

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, alleging deprivations of their First, Fourth, and Fourteenth Amendment rights to the United States Constitution. Plaintiffs also assert related state law claims.

**The Parties**

Plaintiffs are residents of Lyman, Scotts Bluff County, Nebraska (Plaintiffs' Response to the Defendants' Statements of Material Facts in Filing No. 63 ("Pltfs. UF"), ¶ A1).  Henry and Lisa Zitterkopf are the parents of Brandon Zitterkopf (*Id.*, ¶ A18).  Iziah Zitterkopf is Brandon Zitterkopf's son and was five years old at the time of the events in question (Filing No. 29, ¶ 3).[2]

Defendants Hanks and Bliss are residents of Scotts Bluff County, Nebraska (Pltfs. UF, ¶ A2).  Defendants Morehouse, Woodard, Irons, and Vickers are residents of Wyoming (*Id.*, ¶¶ B2-B5).  At all times relevant to this action, defendants were

---

[1] Because this matter comes before the Court on defendants' motions for summary judgment, the recited facts are either undisputed or stated in the light most favorable to plaintiffs. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1052 (8th Cir. 2000).

[2] For ease of reference, the Zitterkopfs will hereafter be referred to by their first names.

employed as follows: (1) Hanks and Bliss were employed as Sheriff's Deputies by Scotts Bluff County, Nebraska; (2) Morehouse was employed as a Captain in the Goshen County, Wyoming, Sheriff's Department; and (3) Woodard, Irons, and Vickers were employed as Deputies by the Goshen County, Wyoming, Sheriff's Department (*Id.*, ¶¶ A3, B2-B5).

Lyman, Scotts Bluff County, Nebraska, borders Goshen County, Wyoming (*Id.*, ¶ B6).

**Factual Background**

At approximately 6:06 p.m. on December 25, 2006, Torrington Police Communications Center ("Torrington dispatch")[3] received a 911 call from a caller who identified herself as Cheryl Hayes (*Id.*, ¶ B7). The caller stated that she was Michelle Duvall's step-mother and reported that there was a possible domestic violence situation occurring in a vehicle on County Road 35 in Goshen County between Duvall and her boyfriend, Brandon (Pltfs. UF, ¶¶ B8-B9; Filing No. 54-2 at 2, ¶ 9).

Goshen County deputies Vickers, Woodard, and Irons were dispatched to the call (Pltfs. UF, ¶ B11). Morehouse, who was off-duty at the time, also responded to assist (*Id.*, ¶ B12). Torrington dispatch advised the officers that Brandon had an active warrant for his arrest and further advised the officers to

---

[3] The Torrington Police Communications Center provides 911 and radio dispatch service for the Goshen County Sheriff's Department (Pltfs. UF, ¶ 10).

"use caution" due to information appearing in the "Officer Safety" block of Brandon's "Person Report" in the Goshen County Sheriff's computer database that read "AGG ASSAULT ON P/O/ RESISTS ARREST" (*Id.*, ¶¶ B13, B15). "AGG ASSAULT ON P/O" is an abbreviation for aggravated assault on a peace officer (*Id.*, ¶ B16). Morehouse and Woodard understood the dispatcher to have advised that Brandon was wanted for aggravated assault on a peace officer (*Id.*, ¶ B17; Filing No. 54-1, ¶ 14; Filing No. 54-4, ¶ 10).[4] A warrant for Brandon's arrest had been issued by the Goshen County Circuit Court on December 12, 2006, for the charge of simple battery (a misdemeanor) (Pltfs. UF, ¶ B14).

Morehouse, Irons, and Woodard were not able to reach the reported location on Country Road 35 due to the weather; Vickers reached the location but did not encounter the vehicle (Filing No. 54-1, ¶ 19; Filing No. 54-4, ¶ 13; Filing No. 54-3, ¶ 12; Filing No. 54-5, ¶ 13). Torrington dispatch next advised the officers that the third-party (Hayes) reported Duvall had been dropped off at Duvall and Brandon's residence, 228 12th Avenue, Lyman, Nebraska, and that the third-party was concerned for Duvall's welfare and that Brandon would return to a residence near the previously reported location on County Road 35 (Pltfs. UF, ¶¶ B19, B21, B23; Filing No. 54-2 at 2, ¶ 9). Morehouse,

_____

[4] Aggravated assault is a felony in Wyoming. Wyo. Stat. § 6-2-502.

-4-

Irons, and Woodard, each driving his own car, drove different routes toward Lyman, Nebraska (Pltfs. UF, ¶ B20).

By phone, Torrington dispatch notified Scotts Bluff County (Nebraska) dispatch of the situation and informed Scotts Bluff County dispatch that a third-party requested law enforcement check on Duvall's welfare (Filing No. 54-2 at 3, ¶ 9).  At approximately 7:10 p.m., Bliss and Hanks were dispatched to the call (Pltfs. UF, ¶ A4; Filing No. 51-3, ¶ 3).

Before officers arrived at Duvall and Brandon's residence, dispatch advised the defendants that the third-party (Hayes) had reported a then in-progress domestic disturbance between Brandon and Duvall at their Lyman residence (Pltfs. UF, ¶¶ A6, B21; Filing No. 51-3, ¶ 5).  The Goshen County officers offered to assist, and Scotts Bluff accepted the offer (Pltfs. UF, ¶ B22).

Bliss met Morehouse and Woodard at the 228 12th Street residence (*Id.*, ¶¶ A8, B23).  Bliss knocked on the door; Duvall answered and identified herself as Brandon's girlfriend (*Id.*, ¶¶ A9, B23).  She appeared to be well, was not injured, and denied being harmed by Brandon, but she indicated that she was afraid Brandon might return "pissed off" and "cause trouble"

-5-

(*Id.*, ¶¶ A9, B24; Filing No. 54-1, ¶ 31; Filing No. 51-2, ¶ 19).[5]
She advised that Brandon had gone to his parents' residence, 229
½ 10th Avenue, which was a couple of blocks away from Brandon and
Duvall's residence (*Id.*, ¶¶ A9, B24).  Duvall advised that
Brandon drove a light colored pickup truck and that it should be
outside his parents' residence (Filing No. 54-1, ¶ 33; Filing No.
51-2, ¶ 10).[6]

Bliss, Morehouse, and Woodard then went to Henry and
Lisa's residence (Pltfs. UF, ¶¶ A13, B25).  The Goshen County
officers informed Bliss that there was an outstanding warrant for
Brandon for aggravated assault on a police officer (Filing No.
51-2, ¶ 11).[7]  The officers observed a light colored pickup truck
parked in the driveway of the residence (Pltfs. UF, ¶¶ A14, B26).
Morehouse and Bliss went to the front door of the residence;

---

[5] Plaintiffs object to this and other statements that
defendants claim Duvall made as inadmissible hearsay.  These
statements are not being offered for the truth of the matter
asserted, see Fed. R. Evid. 801(c); rather, they are being
offered to prove that the officers acted reasonably based on the
information known to them at the time.

[6] *See* footnote 5.

[7] Plaintiffs object to this statement apparently on the
ground that Goshen County officers did not have a reliable basis
for believing the warrant was for aggravated assault on a peace
officer.  It is undisputed that Torrington dispatch advised the
Goshen County officers that Brandon had an active arrest warrant
and to "use caution" due to information in Brandon's person's
report that stated the abbreviation for aggravated assault on a
peace officer.  A reasonable officer could have believed that the
reported information meant Brandon had an outstanding warrant for
aggravated assault on a peace officer.

-6-

Woodard went to the back of the residence to cover any rear exits
(*Id.*, ¶¶ A15, B27, B30).  Bliss knocked on the door, and Henry
and Lisa answered (*Id.*, ¶ A17).  Bliss recognized Henry because
he had met him previously (*Id.*, ¶ A17).  Bliss asked Henry where
Brandon was and informed Henry that officers had a warrant for
Brandon's arrest (*Id.*, ¶¶ A19, A22).  Henry asked what the
warrant was related to, and the officers said Brandon had
assaulted a police officer (Filing No. 64-1, ¶ 8).  Henry
indicated to the officers that he "did not know exactly" where
Brandon was (*Id.*, ¶ 9; Pltfs. UF, ¶ A20; Filing No. 54-1, ¶ 41;
Filing No. 51-2, ¶ 19).  Bliss asked Henry why Brandon's truck
was parked in the driveway, and Henry responded that he (Henry)
was driving the truck (Pltfs. UF, ¶ A21; Filing No. 51-2, ¶ 20).

The officers indicated that they wanted to enter the
residence to arrest Brandon; Henry said "no" and asked to see the
warrant (Filing No. 64-1, ¶ 8).  Morehouse drew his taser gun and
directed Henry to step aside (Filing No. 54-1, ¶ 47).  Bliss
pushed Henry out of the doorway and entered the residence (Filing
No. 64-1, ¶ 11; Filing No. 54-1, ¶ 49; Filing No. 51-2, ¶ 26).
Iziah was standing next to a coffee table in the residence, and
Bliss knocked Iziah against the table with his knee after
entering the residence (Filing No. 64-1, ¶ 11).  Morehouse
followed Bliss into the residence and observed Brandon walking
away from the officers in the hallway (Pltfs. UF, ¶ B36).

-7-

Bliss ordered Brandon to come out of the hallway; Brandon complied, and Bliss arrested him pursuant to the Wyoming warrant and handcuffed him (*Id.*, ¶¶ A28-A29, B38).  While Bliss was handcuffing Brandon, Hanks entered the residence (*Id.*, ¶ A30).  Bliss directed Hanks to place Henry under arrest for his actions, and Hanks handcuffed Henry (*Id.*, ¶ A30; Filing No. 64-1, ¶ 12).  Henry indicated that he needed to take his supplemental oxygen supplies and medication with him to jail, and Hanks assisted in locating those supplies (Pltfs. UF, ¶ B42).  Bliss placed Brandon in Bliss' patrol car, and Hanks placed Henry in Hanks' patrol car (Pltfs. UF, ¶¶ B44-45; Filing No. 51-2, ¶ 28; Filing No. 51-3, ¶ 9).

After Henry was placed in the patrol car, he requested that the handcuffs be loosened (Pltfs. UF, ¶ B43).  To accommodate the request, Hanks had Henry get out of the car and adjusted the handcuffs from behind the back to cuffed in front (*Id.*).

Irons arrived at Henry and Lisa's residence as Bliss and Morehouse entered the residence, and Irons kept watch as Brandon and Henry were handcuffed (*Id.*, ¶ B47).  Irons accompanied Hanks while Hanks escorted Henry to the patrol car and assisted in locating Henry's medicine and oxygen equipment (*Id.*, ¶ B47).

-8-

Woodard made his way to the front door of the residence after Bliss and Morehouse entered the residence (*Id.*, ¶ B46). Woodard stood vigilant but did not put his hands on any of the plaintiffs (*Id.*, ¶ B46).  Woodard assisted in escorting Brandon and Henry to the patrol cars and in locating Henry's supplies (*Id.*, ¶¶ B42, B46).

Vickers arrived on the scene after it was secured and both Brandon and Henry were in custody (*Id.*, ¶ B48).  Vickers assisted in locating Henry's medical equipment for transport to jail (*Id.*, ¶ B42).

Henry and Brandon were transported to the Scotts Bluff County Jail (*Id.*, ¶¶ B44, B45).  Based on an affidavit of probable cause submitted by Bliss, the Scotts Bluff County Attorney's Office charged Henry with violations of Nebraska Statutes for Obstructing A Peace Officer (Neb. Rev. Stat. § 28-906) and False Reporting (Neb. Rev. Stat. § 28-907) (*Id.*, ¶ B49). The charges were later dismissed without prejudice (Filing No. 51-6 at 1).

On December 26, 2006, Brandon waived his extradition rights and agreed to return to Goshen County to answer the charge against him (*Id.*, ¶ B50).  On February 8, 2007, Brandon entered a guilty plea in Case Number CR-2006-0133 to an amended charge of breach of peace (*Id.*, ¶ B51).

## STANDARD OF REVIEW

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is material when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court must view the evidence in the light most favorable to the nonmoving party, with all reasonable inferences drawn in that party's favor. *Pace*, 201 F.3d at 1052. However, when a motion for summary judgment is properly made and supported, the nonmoving party may not rest on the mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

**DISCUSSION**

**I. FEDERAL CLAIMS (42 U.S.C. § 1983 Claims)**[8]

The Nebraska and Wyoming Defendants move for summary judgment on plaintiffs' § 1983 claims on the basis of qualified immunity.

"Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 987-88 (8th Cir. 2009) (quoting *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Id.* at 988. The Court may exercise its discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first. *Id.*

With respect to the second prong, "the contours of the right must be sufficiently clear that a reasonable official would

---

[8] The record demonstrates that defendants Irons, Woodard, and Vickers' involvement on the night in question was minimal and does not give rise to liability for any of the plaintiffs' § 1983 claims. Accordingly, Irons, Woodard, and Vickers are entitled to summary judgment on all § 1983 claims. The following discussion addresses plaintiffs' § 1983 claims against the remaining defendants: Morehouse, Hanks, and Bliss.

understand that what he is doing violates that right." *Id.* at 991 (quoting *Lindsey v. City of Orrick,* 491 F.3d 892, 902 (8th Cir. 2007)). "The question is whether the law gave the officials 'fair warning that their alleged conduct was unconstitutional.'" *Id.* (quoting *Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

**A. Fourth Amendment Claims**

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV; *United States v. Hallam*, 407 F.3d 942, 945 (8th Cir. 2005).

**1. Alleged Unlawful Entry of Henry and Lisa's Home**

All plaintiffs claim defendants violated their clearly established Fourth and Fourteenth Amendment rights when defendants entered and searched Henry and Lisa's home without a search warrant or valid arrest warrant. This claim is asserted against defendants in their individual capacities.

"Generally, the Fourth Amendment requires the police to obtain a warrant before entering a home." *Smith v. Kansas City, Mo. Police Dep't*, 586 F.3d 576, 580 (8th Cir. 2009) (quoting *United States v. Spotted Elk*, 548 F.3d 641, 651 (8th Cir. 2008)).

-12-

However, law enforcement may enter a home without a warrant if the entry is supported by (1) consent, or (2) probable cause and exigent circumstances. *United States v. Poe*, 462 F.3d 997, 999 (8th Cir. 2006).

"Probable cause exists when, 'given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place.'" *Id.* at 999-1000 (quoting *Kleinholz v. United States*, 339 F.3d 674, 676 (8th Cir. 2003) (per curiam)). The existence of probable cause may be based on the collective knowledge of all officers involved "provided there is some degree of communication among the relevant officers." *Id.* at 1001.

"Exigent circumstances exist if an objectively reasonable officer on the scene would have sufficient grounds to believe an exigency existed." *Id.* at 1000. "Exigent circumstances include threats to an individual's life, a suspect's imminent escape, the imminent destruction of evidence, or situations where 'there is a compelling need for official action and there is no time to secure a warrant.'" *Smith*, 586 F.3d at 580 (quoting *Radloff v. City of Oelwein*, 380 F.3d 344, 348 (8th Cir. 2004)). The following factors are relevant in determining whether exigent circumstances exist:

> (1) seriousness of the alleged
> offense; (2) reasonable belief that
> the suspect is armed; (3) clear
> showing of probable cause to

-13-

> believe that the suspect committed
> the alleged offense; (4) strong
> reason to believe that the suspect
> is on the premises; (5) likelihood
> that the suspect will escape if not
> swiftly apprehended; and (6) entry
> may be made peaceably.

*Duncan v. Storie*, 869 F.2d 1100, 1102 n.3 (8th Cir. 1989).

**Henry and Lisa**

Based on the record presently before the Court, Hanks, Bliss, and Morehouse are not entitled to qualified immunity on Henry and Lisa's unlawful entry claims.

First, viewing the evidence in the light most favorable to plaintiffs, Henry and Lisa have sufficiently shown a violation of their Fourth Amendment rights. Henry and Lisa had a legitimate expectation of privacy in their home, defendants did not have a warrant to enter the home,[9] and defendants did not have consent to enter the home. In addition, a reasonable jury could find that exigent circumstances did not exist to justify the entry.

Second, a reasonable officer would have known that the conduct of Hanks, Bliss, and Morehouse violated a clearly established right. It was clearly established in December 2006

---

[9] Brandon's Wyoming arrest warrant did not permit entry into the home. First, the Wyoming warrant had no effect in Nebraska. *See* 5 Am. Jur. 2d *Arrest* § 27. Second, even if the warrant was valid in Nebraska, defendants could not enter Henry and Lisa's home to execute the arrest warrant without obtaining a search warrant for the home. *See Steagald v. United States*, 451 U.S. 204, 215-16 (1981).

that officers could not arrest an individual in his own home absent a warrant or exception to the warrant requirement, *see Payton v. New York*, 445 U.S. 573, 589-590 (1980), and officers could not search for the subject of an arrest warrant in a third-party's home absent a search warrant for the home or an exception to the warrant requirement, *Steagald*, 451 U.S. at 215-216.

Defendants argue that arguable exigent circumstances existed because defendants reasonably believed there was a legitimate threat to officer safety, but the record does not sufficiently support this argument.  A reasonable officer with defendants' knowledge could have reasonably believed the following before entering the home:[10] (1) Brandon was wanted for aggravated assault on a peace officer in Wyoming, (2) Brandon had a history of assaultive behavior, (3) Henry was not being candid with officers about Brandon's whereabouts, and (4) Duvall was concerned that Brandon would return to Duvall and Brandon's residence "pissed off" and "cause trouble."  The seriousness of Brandon's underlying offense and Henry's seemingly suspicious behavior are highly relevant to the determination of exigent circumstances.  However, these facts must be considered in light of the remaining record, which when viewed in favor of plaintiffs

---

[10] For purposes of these motions only, the Court will assume without deciding that defendants can rely on the collective knowledge doctrine in establishing the existence of exigent circumstances.

-15-

demonstrates that (1) officers had no reasonable basis for believing there were weapons at Henry and Lisa's residence, (2) officers were not physically or verbally threatened by Henry or any other occupants in the home, (3) there was an officer at the back of the house, two officers at the front of the house, and additional officers were on their way, (4) the incidents occurred at approximately 7:00 p.m. on Christmas day, (5) Duvall was not injured and denied being harmed by Brandon, and (6) there was no indication that Brandon posed a threat to any occupants in Henry and Lisa's home.  When viewing the totality of the circumstances, the Court cannot say that a reasonable officer could have believed that immediate entry into the home was necessary to protect officer safety.

        The Nebraska Defendants also appear to argue that arguable exigent circumstances existed because officers reasonably believed they were in "fresh pursuit" of Brandon for the commission of a felony.  This argument fails.  Defendants could not have reasonably believed they were in fresh pursuit of Brandon for the offense identified in the arrest warrant because there was no immediate or continuous pursuit from the scene of the crime.  *See United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2005) (citing *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) for the proposition that there must be an "immediate or continuous pursuit [of the suspect] from the scene of [the]

-16-

crime," to fall within the hot-pursuit exception).  To the extent defendants were in fresh pursuit of Brandon for the reported domestic disturbance, officers have not shown that they had arguable probable cause to believe Brandon committed any offense related to the reported disturbance after meeting with Duvall.

The Nebraska Defendants also argue they could have reasonably believed the entry was justified to arrest Henry.  As discussed below, this argument also lacks merit.

Accordingly, Morehouse, Hanks, and Bliss are not entitled to summary judgment on Henry and Lisa's unlawful entry claims.

**Brandon and Iziah**

Morehouse, Hanks, and Bliss are entitled to summary judgment on Brandon and Iziah's alleged unlawful entry claims. Brandon and Iziah have sufficiently shown a violation of their constitutional rights, but the right asserted was not clearly established in December 2006.

The first issue is whether Brandon and Iziah have sufficiently shown a constitutional violation.  Defendants contend Brandon and Iziah did not have a legitimate expectation of privacy in Henry and Lisa's home, and although a close question, the Court finds this argument fails.

To prevail on a Fourth Amendment claim, the plaintiff must demonstrate that he had "a legitimate expectation of privacy

-17-

in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990).  A person can have a legitimate expectation of privacy in another person's home.  *Id.* at 97-98.  Specifically, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).  In determining whether a person has a legitimate expectation of privacy in another person's home, several factors may be relevant, including the nature and length of the guest's visit and the previous relationship between the guest and householder.  *See id.* at 91; *see also United States v. McCaster*, 193 F.3d 930, 933 (8th Cir. 1999) (stating relevant factors include "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises.")

Here, Brandon and Iziah were closer to overnight guests than persons merely present with the householder's consent.  The record demonstrates that Brandon and Iziah lived a couple of blocks away from Henry and Lisa's home, Iziah spent a lot of time with Henry and Lisa and stayed overnight at their house on some weekends prior to the incident in question, and Brandon visited the house several times a week to have dinner, watch movies, and

-18-

"hang out."  In contrast, there is no evidence that Brandon and Henry were overnight guests on the day in question, kept personal effects at the home, or had a key to the home, and it appears Brandon was at the home for only a brief period of time on the day in question before officers arrived.  On balance, the Court finds Brandon and Iziah have sufficiently shown that they had a legitimate expectation of privacy in Henry and Lisa's home on the day in question.

Brandon and Iziah have also sufficiently shown that officers unlawfully entered the home.  Although there was an outstanding Wyoming warrant for Brandon's arrest, defendants have not shown that the Wyoming warrant was effective in Nebraska. *See* 5 Am. Jr. 2d *Arrest* § 27.  Further, as discussed above, a reasonable jury could find exigent circumstances did not exist to enter the home.

While Brandon and Iziah have sufficiently shown a constitutional violation, the right asserted was not clearly established.  There was no clearly established law in December 2006 that would have put a reasonable officer on notice that Brandon and Iziah had a legitimate expectation of privacy in Henry and Lisa's home based on Brandon and Iziah's visits to the house prior to December 25, 2006, or the day-time visits to the house on the day in question.

-19-

Accordingly, Morehouse, Hanks, and Bliss are entitled to summary judgment on Brandon's and Iziah's unlawful entry claims.

**2. Alleged Unlawful Arrests**

Henry and Brandon claim their arrests violated the Fourth and Fourteenth Amendments.  This claim is asserted against defendants in their individual capacities.

The lawfulness of an arrest depends on the place in which it occurs.  An officer may arrest an individual in public if the officer has probable cause to believe the individual (1) committed a felony, or (2) committed a misdemeanor in the officer's presence.  *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).  However, "absent exigent circumstances, an arrest warrant is required in order to arrest a suspect in his home or in any private place in which the suspect has a legitimate expectation of privacy as a guest or otherwise."  *Haley v. Armontrout*, 924 F.2d 735, 737 (8th Cir. 1991).  Probable cause to arrest an individual exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense" at the time of the arrest.  *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000) (quoting *Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1389 (8th Cir. 1986)).

**Henry**

Based on the present record, Hanks, Bliss, and
Morehouse are not entitled to qualified immunity on Henry's
unlawful arrest claim.

First, Henry has sufficiently shown a constitutional
violation.  Defendants do not dispute that Henry was inside his
home at the time of his arrest (a place where he had a legitimate
expectation of privacy), defendants did not have a warrant for
Henry's arrest, and a reasonable jury could find that there were
no exigent circumstances justifying entry into the home to
effectuate the arrest.

In addition, a reasonable officer would have known that
the conduct of Morehouse, Hanks, and Bliss violated a clearly
established right.  It was clearly established in December 2006
that officers could not arrest an individual in his home without
a warrant or an exception to the warrant requirement.  *Payton*,
445 U.S. at 590  (". . . the Fourth Amendment has drawn a firm
line at the entrance to the house.  Absent exigent circumstances,
that threshold may not reasonably be crossed without a
warrant."); *Welsh v. Wisconsin*, 466 U.S. 740 (1984).  Defendants
contend the arrest was lawful pursuant to Neb. Rev. Stat. § 29-
404.02(1)(b)(iv), which permits officers to make a warrantless
arrest where the officer has reasonable cause to believe a
misdemeanor was committed in his presence.  This statute does not

-21-

limit its application to public places, but it is clear that the Constitution requires additional protections to effectuate an arrest in an individual's home.  *See Payton*, 445 U.S. at 590; *Welsh*, 466 U.S. 740; *see also State v. Schlothauer*, 206 Neb. 670, 674 (1980) (finding warrantless arrest in defendant's home unconstitutional absent exigent circumstances despite application of Neb. Rev. Stat. § 29-404.02).

The Nebraska Defendants also claim the arrest was lawful under Neb. Rev. Stat. § 29-404.02(1)(c)(ii), which permits a warrantless arrest if an officer has reasonable cause to believe the person has placed, by physical menace, a household member in fear of imminent bodily injury.  The record does not support a finding that defendants had reasonable cause to believe that Henry placed another individual in the home in any fear of imminent bodily injury.

Morehouse argues he is not a proper party to Henry's unlawful arrest claim because he did not arrest or incarcerate Henry.  The Court finds genuine issues of material fact exist as to whether Morehouse was sufficiently involved in Henry's arrest to give rise to § 1983 liability.

**Brandon**

Morehouse, Hanks, and Bliss are entitled to qualified immunity on Brandon's unlawful arrest claim.

Brandon has sufficiently shown a constitutional violation because, as discussed above, he had a legitimate expectation of privacy in Henry and Lisa's home, defendants did not have a valid arrest warrant, and a reasonable jury could find no exigent circumstances existed.  The Wyoming Defendants contend Brandon's arrest was lawful pursuant to Neb. Rev. Stat. § 29-742, but similar to the above analysis, additional requirements applied where defendants arrested Brandon in a place where he had a legitimate expectation of privacy.

Notwithstanding, officers did not violate a clearly established right when they arrested Brandon in Henry and Lisa's home.  As discussed above, it was not clearly established in December 2006 that Brandon had a legitimate expectation of privacy in Henry and Lisa's home.  Thus, a reasonable officer in defendants' positions would have believed that it was lawful to arrest Brandon in Henry and Lisa's home solely based on probable cause to believe Brandon committed a felony.

A reasonable officer in Bliss' position would have arguable probable cause to believe Brandon committed a felony. Torrington dispatch informed Goshen County officers that Brandon had an outstanding Wyoming arrest warrant and that there was information in Brandon's person report that stated aggravated assault on a peace officer.  A reasonable officer could have understood this information to mean Brandon's outstanding warrant

-23-

was for aggravated assault on a peace officer.  Morehouse
informed Bliss that Brandon had an outstanding Wyoming warrant
for aggravated assault on a peace officer.  As Morehouse is
Captain of the Goshen County Sheriff's Department, it was
reasonable for Bliss to rely on this information.  Because a
reasonable officer in Bliss' position would have had arguable
probable cause to believe Brandon committed a felony, the arrest
did not violate a clearly established right.

### 3. Alleged Excessive Force Claims

Brandon, Iziah, and Henry claim defendants violated
their right to be free from excessive force.  These claims are
asserted against defendants in their individual capacities.

Excessive force claims are analyzed under the Fourth
Amendment's reasonableness standard.  *Graham v. Connor*, 490 U.S.
386, 395 (1989).  Determining whether the amount of force used to
effectuate a particular seizure was reasonable

> requires careful attention to the
> facts and circumstances of each
> particular case, including the
> severity of the crime at issue,
> whether the suspect poses an
> immediate threat to the safety of
> the officers or others, and whether
> he is actively resisting arrest or
> attempting to evade arrest by
> flight.

*Id.* at 396.
The reasonableness of the force used must be judged from the
perspective of a reasonable officer at the time it was used.  *Id.*

-24-

The right to make an arrest carries with it the right to use some degree of force to effectuate the arrest. *Id.*

**Henry**

Because Hanks, Morehouse, and Bliss are not entitled to qualified immunity on Henry's unlawful arrest claim at this time, the Court finds these individuals are also not entitled to qualified immunity on Henry's excessive force claim at this time.

**Brandon**

Morehouse, Hanks, and Bliss are entitled to summary judgment on Brandon's excessive force claim.  The record does not support a finding that officers used more force than was necessary to effectuate Brandon's arrest.  Because a reasonable officer could have believed Brandon's arrest was lawful, defendants are entitled to qualified immunity on Brandon's excessive force claim.

**Iziah**

Morehouse, Hanks, and Bliss are entitled to summary judgment on Iziah's  excessive force claim.

To establish an excessive force claim under the Fourth Amendment, the plaintiff must first demonstrate that a seizure occurred.  *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003).  "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority. . . . To be a violation of the Fourth

-25-

Amendment, the restraint in liberty must be effectuated 'through means intentionally applied.'"  *Id.* at 846-47 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)) (internal citations omitted).

Iziah's excessive force claim is based on the allegation that he was knocked to the floor while officers were in the process of searching for Brandon or arresting Brandon. Iziah has failed to show that officers intentionally knocked him down.  No reasonable jury could find Iziah was seized for purposes of the Fourth Amendment.  Accordingly, Morehouse, Hanks, and Bliss are entitled to summary judgment on Iziah's excessive force claim.

**B. First Amendment Claim**

**1. Alleged Retaliation Claim**

Henry claims defendants violated his clearly established First Amendment rights by arresting and incarcerating him in retaliation for his request to see a warrant before permitting defendants to enter his home.  This claim is asserted against defendants in their individual capacities.

To prove his retaliation claim, Henry must prove (1) he engaged in protected activity, (2) defendants took adverse action against him that would "chill a person of ordinary firmness from engaging in that activity," and (3) defendants' desire to retaliate was the motiving factor behind the adverse action: "but

-26-

for" Henry requesting to see a warrant, Henry would not have been
arrested or incarcerated. *Lewis v. Jacks*, 486 F.3d 1025, 1028
(8th Cir. 2007); *Senty-Haugen v. Goodno*, 462 F.3d 876, 890 (8th
Cir. 2006).  To establish the third element, Henry must prove the
absence of probable cause for his arrest. *See Williams v. City
of Carl Junction, Mo.*, 480 F.3d 871, 875-77 (8th Cir. 2007).

Defendants are entitled to summary judgment on Henry's
retaliation claim because they had probable cause to arrest
Henry.  Specifically, defendants (based on Morehouse's and
Bliss's personal observations) had probable cause to believe
Henry violated Neb. Rev. Stat. § 28-907, which provides in
relevant part:

> (1) A person commits the offense of
> false reporting if he or she:
>
>     (a) Furnishes material
> information he or she knows to be
> false to any peace officer or other
> official with the intent to
> instigate an investigation of an
> alleged criminal matter or to
> impede the investigation of an
> actual criminal matter[.]

Based on information defendants received from Duvall
and Morehouse and Bliss' observation of a light colored pickup
truck in the driveway of Henry and Lisa's residence, defendants
had probable cause to believe Brandon was inside Henry and Lisa's
home.  Officers notified Henry that they were there to arrest
Brandon pursuant to a Wyoming warrant.  Officers asked Henry

-27-

where Brandon was, and Henry indicated that he did not know exactly where Brandon was. When officers asked why Brandon's car was parked in the driveway, Henry responded that he (Henry) had been driving the car that day. Based on information known to defendants at the time, they had probable cause to believe Henry provided materially false information (information about Brandon's whereabouts) knowing it to be false with the intent to impede officers' arrest of Brandon. Accordingly, defendants are entitled to summary judgment on Henry's retaliation claim.

## II. STATE LAW CLAIMS[11]

The Wyoming Defendants briefly move for summary judgment on the state law claims based on grounds other than qualified immunity, and therefore, the Court will briefly address these arguments as they relate to Morehouse. The Nebraska Defendants do not address the state law claims in their present motion for summary judgment, and therefore, the Court will not dismiss the state law claims as to the Nebraska Defendants at this time.

## A. Neb. Rev. Stat. § 20-148 Claims

Lisa and Henry allege violations of Neb. Const. Art. I, § 7 and seek damages pursuant to Neb. Rev. Stat. § 20-148. The

---

[11] For reasons similar to those indicated above, the Court finds all of plaintiffs' state law claims fail as to Irons, Woodard, and Vickers in their individual and official capacities. Accordingly, Irons, Woodard and Vickers are entitled to summary judgment on all state law claims.

-28-

§ 20-148 claims are restatements of Lisa and Henry's Fourth Amendment claims.  These claims are asserted against defendants in their individual capacities.

Morehouse only argues that the § 20-148 claims fail because exigent circumstances existed to enter Henry and Lisa's home.  Because a reasonable jury could find that exigent circumstances did not exist, Morehouse has not shown he is entitled to judgment as a matter of law on the state civil rights claims.

**B. False Imprisonment and False Arrest Claims**

Henry and Brandon allege claims for false imprisonment and false arrest against all defendants in their individual and official capacities.

Morehouse first contends he is entitled to immunity under Nebraska's tort claims act because he was requested to assist a Nebraska political subdivision.  Because Morehouse has not cited any authority to support this argument, it will be denied.

Morehouse also briefly alleges plaintiffs' claims fail on the merits.  As discussed more fully above, genuine issues of material fact exist as to whether Brandon and Henry were lawfully arrested.  Accordingly, Morehouse has not shown he is entitled to summary judgment on Brandon's and Henry's false imprisonment/ false arrest claims.

## C. Malicious Prosecution Claim

Henry asserts a claim for malicious prosecution.  This claim is asserted against all defendants in their individual and official capacities.

In order to succeed on his malicious prosecution claim, Henry must prove in part the absence of probable cause.  *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 116-17, 629 N.W.2d 511, 526 (2001).  As discussed above, officers had probable cause to believe Henry violated a Nebraska statute; thus, Morehouse, in both his individual and official capacities, is entitled to summary judgment on Henry's malicious prosecution claim.

## D. Assault and Battery Claims

Henry, Brandon, and Iziah assert assault and battery claims against all defendants in their individual and official capacities.  Morehouse only argues that these claims fail because Henry and Brandon were lawfully arrested.

Because genuine issues of material fact exist as to whether Brandon and Henry were lawfully arrested, Morehouse has not shown that he is entitled to summary judgment on Henry's and Brandon's assault and battery claims.

Iziah has not sufficiently shown that officers intentionally pushed him down, and therefore, his assault and battery claims fail as a matter of law.  Morehouse, in both his

-30-

individual and official capacities, is entitled to summary judgment on Iziah's assault and battery claims.

**E. Negligence Claims**

All plaintiffs assert a claim for negligence against all defendants in their individual and official capacities. Morehouse only asserts that the negligence claims fail for the same reasons the intentional tort claims fail.

Genuine issues of material fact exist as to the merit of plaintiffs' negligence claims against Morehouse. Morehouse's motion for summary judgment on plaintiffs' negligence claims will be denied.

IT IS ORDERED:

1) The Nebraska Defendants' motion for summary judgment based on qualified immunity is granted in part and denied in part. The Nebraska Defendants' motion for summary judgment is granted as to (1) all of Brandon's § 1983 claims, (2) all of Iziah's § 1983 claims, and (3) Henry's § 1983 claim for retaliation. The Nebraska Defendants' motion for summary judgment is denied in all other respects;

2) The Wyoming Defendants' motion for summary judgment based on qualified immunity is granted in part and denied in part. Irons, Woodard, and Vickers' motion for summary judgment is granted as to all federal and state claims; Irons, Woodard, and Vickers are terminated as parties in this action.

Morehouse's motion for summary judgment is granted as to (1) all
of Brandon's § 1983 claims, (2) all of Iziah's § 1983 claims, (3)
Henry's § 1983 claim for retaliation, (4) Iziah's state law
claims for assault and battery against Morehouse in his
individual and official capacities, and (5) Henry's state law
claim for malicious prosecution against Morehouse in his
individual and official capacities.  Morehouse's motion for
summary judgment is denied in all other respects.

DATED this 30th day of March, 2010.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court